IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 5, 2020

## MICHAEL CORY HALLIBURTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 14-04181      J. Robert Carter, Jr., Judge

_____

### No. W2019-01458-CCA-R3-PC

_____

The Petitioner, Michael Cory Halliburton, appeals the denial of his petition for post-conviction relief, asserting that he received ineffective assistance of counsel. After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Benjamin B. Wilkins, Memphis, Tennessee, for the appellant, Michael Cory Halliburton.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The Petitioner was convicted of attempted first-degree premeditated murder, two counts of aggravated assault, and one count of domestic assault, arising out of the vicious beating of his wife with a metal knife sharpener after she told him that she was filing for divorce. State v. Michael Halliburton, No. W2015-02157-CCA-R3-CD, 2016 WL 7102747, at *1 (Tenn. Crim. App. Feb. 6, 2016), perm. app. denied (Tenn. 2017). The Petitioner asserted at trial that he was insane at the time of the attack or, in the alternative, was incapable of forming the requisite culpable mental states for the offenses. Id. The trial court imposed a sentence but, after doing so, granted the Petitioner's motion for new

trial and recused itself from presiding over the new trial. Id. This court granted the State's motion for an extraordinary appeal and remanded the matter for a new sentencing hearing and hearing on the motion for new trial. Id. The successor trial court approved the jury's verdict and, after merging the Petitioner's convictions for aggravated assault and domestic assault with his attempted first-degree murder conviction, imposed a sentence of twenty-one years in the Department of Correction. Id. This court affirmed his convictions and sentence on direct appeal, and the Tennessee Supreme Court denied his application for permission to appeal. Id.

The Petitioner filed a timely pro se petition for post-conviction relief in which he generally alleged ineffective assistance of counsel but provided no specific facts to support his allegation. Thereafter, appointed counsel filed an almost eighty-page amended petition. Along the same vein as one of the Petitioner's assertions on appeal, in his amended petition, the Petitioner claimed that "[i]neffective assistance of trial counsel to have denigrated the [Petitioner]." The Petitioner also raised numerous specific allegations of ineffective assistance of counsel but did not raise the two other allegations asserted on appeal: that trial counsel was ineffective for not keeping the defense expert witness in the courtroom during the testimony of the State's expert and not having the defense expert testify in surrebuttal.

The post-conviction court conducted an evidentiary hearing, at which the Petitioner began by testifying about the stressors that he experienced leading up to the attack and why he snapped. Asked if he and counsel discussed the brief psychotic disorder defense, the Petitioner said, "it really wasn't a discussion." However, he acknowledged that counsel pursued such defense, as was his desire, and that counsel explained to him that he would have the burden of proof, which involved "call[ing] an expert" to testify.

The Petitioner testified that counsel communicated two pretrial settlement offers to him, one of which included no jail time, but said that counsel used insulting obscenities when the Petitioner expressed his desire to not accept the offers. Counsel and counsel's law partner advised the Petitioner to take the offer and told the Petitioner that "there was something wrong with [him]" for rejecting it. They asked the Petitioner if he "want[ed] to go to prison and be raped and extorted[.]" The Petitioner said that counsel badgered him until the point that he started crying.

Thereafter, the Petitioner addressed some of his other issues in an argumentative fashion at times and then essentially read his amended petition into the record to complain of the various reasons counsel was ineffective.

Dr. John Ciocca testified that he believed the Petitioner had suffered a brief psychotic episode during the events in question and explained what that entailed and the

reasons behind his opinion. Dr. Ciocca acknowledged that he was able to explain to the jury at trial some of the stressors that the Petitioner experienced that led to his brief psychotic episode but said that there were some stressors to which he was not allowed to testify.

Dr. Ciocca testified that trial counsel did not ask him to stay in the courtroom after the conclusion of his testimony and, therefore, he did not observe the Petitioner's testimony or the State's expert rebuttal proof. He was aware that the State was likely to call an expert witness who had "viewed records and . . . had a very brief interview with [the Petitioner]." He was not sure whether the State's expert "was representing that she had done a full and comprehensive evaluation or whether she was just preparing to be a rebuttal witness to my testimony." Dr. Ciocca acknowledged that the Petitioner's family would have incurred an additional charge in order for him to be present in the courtroom for the testimony of the Petitioner or the State's expert. However, he said that he would have been willing to stay "even if payment was not immediately forthcoming."

The Petitioner's trial counsel testified that the Petitioner "was without a doubt the most difficult client I've ever had and probably will go down at the end of my career as the most difficult client I've ever had." He recalled that the Petitioner "did not want to take [his] advice on . . . pretty much everything" and that "it got to a point where [counsel] just started kind of doing what [the Petitioner] wanted [him] to, even though it went against what [counsel] would have done had [he] been making the decisions." Despite having difficulties with the Petitioner, counsel said that they were able to develop a strategy for trial to pursue a defense of not guilty by reason of insanity with diminished capacity as an alternate theory. Counsel noted that "the strategy I wanted to go with took a backseat to what my client insisted on putting forward as a defense."

Counsel testified that he brought in Dr. Ciocca to assist in the Petitioner's defense and made sure he had access to the Petitioner's medical records. Counsel said that he did not instruct Dr. Ciocca to remain in the courtroom to observe the testimony of the Petitioner or the State's rebuttal expert. He acknowledged that it was "theoretically possible" that Dr. Ciocca could have been recalled to explain some of the Petitioner's testimony to the jury in respect to his diagnosis. Counsel was asked about potentially recalling Dr. Ciocca to offer some rebuttal of the State's expert, to which he responded that he did not see any "reason to have him come sit and listen to her testimony" because counsel "would have talked to [Dr. Ciocca] ahead of time about cross-examination of their expert and what I anticipated her testimony to be."

Counsel reiterated that he pursued the not guilty by reason of insanity defense at the Petitioner's insistence, even though "[i]t is a very difficult defense." He said that "the proof that was presented, the defense that was put on, it was exactly what the [Petitioner]

asked for." He elaborated that "many pieces of advice I gave [the Petitioner] were disregarded," but counsel felt that he "did everything [he] could to save [the Petitioner] from himself." Regardless of the Petitioner's being a difficult client, counsel did not believe that communication between them had completely broken down. He said that, "instead of withdrawing [from the case], [he] just did exactly what [the Petitioner] wanted [him] to do."

The post-conviction court entered a written order denying relief, in which it found that the Petitioner "has not prove[n] that his trial attorney's performance was deficient. [The] Petitioner simply does not accept the fact that the jury did not agree with him." The post-conviction court did not specifically address the relationship between the Petitioner and trial counsel or the defense expert's not being present during different phases of trial, presumably because such claims were not explicitly raised in the petition.

## ANALYSIS

On appeal, the Petitioner argues that counsel rendered ineffective assistance by: (1) failing to keep Dr. Ciocca, his mental health expert, in the courtroom to observe his testimony and that of the State's rebuttal expert witness and not calling Dr. Ciocca to testify in surrebuttal; and (2) allowing for the relationship between the Petitioner and counsel to deteriorate resulting in poor communication. The State asserts that the Petitioner's claims regarding Dr. Ciocca are waived because they were not specifically raised in his petition and therefore not addressed by the post-conviction court.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.").

As to the Petitioner's complaint that counsel failed to keep Dr. Ciocca in the courtroom to observe his testimony and that of the State's rebuttal expert witness and not call Dr. Ciocca to testify as a surrebuttal witness, regardless of any potential waiver, the Petitioner has failed to prove that he received ineffective assistance of counsel. At the

evidentiary hearing, Dr. Ciocca testified that the Petitioner's family would have incurred an additional charge for his continued presence in the courtroom. Counsel testified that he did not see any "reason to have [Dr. Ciocca] come sit and listen to [the State's expert's] testimony" because counsel consulted with Dr. Ciocca ahead of time about his cross-examination of the State's expert based on her anticipated testimony. We cannot conclude that counsel's advance preparation and not incurring additional expense was deficient so as to fall below an objective standard of reasonableness. In addition, the Petitioner did not elicit proof at the evidentiary hearing regarding what questions Dr. Ciocca could have suggested to counsel had he remained in the courtroom that would have called the State's expert's testimony into question or what proof Dr. Ciocca could have offered had he been called in surrebuttal. Therefore, the Petitioner has not met his burden of establishing prejudice.

As to the Petitioner's complaint that counsel allowed the relationship between him and counsel to deteriorate resulting in poor communication, the Petitioner is likewise not entitled to post-conviction relief. In support of his claim, the Petitioner points to the "hostility expressed" between him and counsel at the evidentiary hearing, as well as counsel's communication of a plea offer with "resort to obscenity" rather than "with consideration to the burden of proof." However, counsel testified that despite his difficulties with the Petitioner, he did not believe that communication between them had completely broken down and they were able to develop a strategy for trial. Counsel noted that "the strategy I wanted to go with took a backseat to what my client insisted on putting forward as a defense" and that "the proof that was presented, the defense that was put on, it was exactly what the [Petitioner] asked for." The Petitioner attempts to sidestep his insistence in which defense to pursue by alleging "but for the animosity grown out of their professional relationship[, he] would have had the opportunity to understand what was required in presenting his defense." However, the Petitioner acknowledged at the evidentiary hearing that counsel discussed the burden of proof with regard to the trial strategy of a brief psychotic disorder. Counsel communicated with the Petitioner and presented the defense the Petitioner chose to present. The Petitioner has failed to prove that counsel performed deficiently or that any deficiency caused him prejudice.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denial of the petition.

_____
ALAN E. GLENN, JUDGE

- 6 -